THOMAS G. LANE, JR., ADMINISTRATOR D.B.N. OF THE ESTATE OF TOMMY CURTIS COLEE, DECEASED v. BETTY COLEE SCARBOROUGH, THOMAS W. COLEE AND LYNN WOOD COLEE

No. 64

(Filed 12 December 1973)

1. Husband and Wife § 11— separation agreement — construction

Questions relating to the construction and effect of separation agreements between a husband and wife are ordinarily determined by the same rules which govern the interpretation of contracts generally.

2. Contracts § 12— construction — intent of parties

The heart of a contract is the intention of the parties which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.

3. Contracts § 12— construction — implied provisions given effect

A contract encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion.

4. Husband and Wife § 11; Descent and Distribution § 13— separation agreement — release of right to share in spouse's estate

Where plaintiff and her deceased spouse entered into a separation agreement in which they declared that they could no longer live together without endangering their health and well-being, they agreed to live wholly separate and apart from each other as though they had never been married, plaintiff agreed to make no demands upon deceased for support, each agreed that the other would thereafter hold, acquire and dispose of all kinds of property as though free and unmarried, without the consent or joinder of the other party, and each

released the right to administer upon the estate of the other, the specific terms of the contract were totally inconsistent with an intention that the parties would each retain the right to share in the estate of the other under G.S. 29-13 and G.S. 29-14, if he or she were to become the surviving spouse.

APPEAL by defendants Betty Colee Scarborough and Thomas W. Colee under G.S. 7A-30(2) from the decision of the Court of Appeals affirming the judgment of Snepp, J., 1 January 1973 Schedule "C" Session of MECKLENBURG.

This action for a declaratory judgment was instituted by the administrator d.b.n. of Tommy Curtis Colee (Colee), who died intestate on 15 July 1971, to determine whether defendant Lynn Wood Colee (Lynn), Colee's surviving spouse, is entitled to share in his estate. Judge Snepp heard the controversy upon a waiver of jury trial and stipulated facts, which are summarized below.

Colee and Lynn were married on 12 October 1968. No children were born of their marriage. In June 1970 they executed the separation agreement, a copy of which is attached to the complaint as Exhibit A. At the time of Colee's death they were living separate and apart but were not divorced. Defendants Betty Colee Scarborough and Thomas W. Colee are the parents of Colee, and they claim his entire estate. Lynn also claims the estate, which is less than $10,000.00.

In the preamble to the separation agreement the parties recited their marriage, their separation on 14 June 1970, and their conviction that they could no longer live together as husband and wife. In the first three numbered paragraphs thereafter they agreed (1) that henceforth they would "live wholly separate and apart from each other in the same manner and to the same extent as though they had never been married"; (2) that no children were born of their marriage; and (3) that they would divide their household furnishings. The remaining paragraphs of the agreement are quoted verbatim:

"4. That from and after the date of this Agreement the said party of the second part [Lynn] does hereby agree that she will make no demands upon the said party of the first part [Colee] for support and further will incur no obligations, debts or otherwise which will be or become the responsibility of the said party of the first part.

"5. It is agreed that each of the parties may from this date, and at all times hereafter purchase, acquire, own, hold, possess, dispose of, and convey any and all classes and kinds of property, both real and personal, as though free and unmarried, without the consent or joinder of the other party, and each party does hereby release the right to administer upon the estate of the other.

"6. Both parties hereunto agree that henceforth neither of them, in any manner will molest or interfere with the personal rights, liberties, privileges or affairs of the other, and each shall henceforth live his and her own personal life as though unmarried, and unrestricted in any manner by the marriage that has heretofore existed."

Judge Snepp ruled that by their separation agreement Colee and Lynn did not "mutually release their right of intestate's succession" as provided by G.S. 29-13 and G.S. 29-14; that Lynn is an heir of Colee and "has the right to inherit from his estate as a surviving spouse." He ordered plaintiff administrator to distribute to Lynn the assets of Colee's estate to which she, as surviving spouse, would be entitled under G.S. 29-13 and G.S. 29-14. From this judgment defendant-parents appealed. In a 2-to-1 decision the Court of Appeals affirmed. *Lane v. Scarborough,* 19 N.C. App. 32, 198 S.E. 2d 45 (1973). By reason of the dissent defendant-parents appeal to this Court as a matter of right.

*Allen A. Bailey by Douglas A. Brackett for defendant appellee.*

*Sanders, Walker & London by Robert G. Sanders and Robert C. Stephens for Betty Colee Scarborough and Thomas W. Colee.*

SHARP, Justice.

As the parties have stipulated, the sole question presented by this appeal is whether Lynn, by executing the separation agreement, releasesd her distributive share as surviving spouse in the estate of Colee. G.S. 29-13 and G.S. 29-14.

[1] Questions relating to the construction and effect of separation agreements between a husband and wife are ordinarily determined by the same rules which govern the interpretation of contracts generally. Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention

of the parties at the moment of its execution. *Bowles v. Bowles,* 237 N.C. 462, 75 S.E. 2d 413 (1953); 24 Am. Jur. 2d *Divorce and Separation* § 904 (1966); 27B C.J.S. *Divorce* § 301(3) (1959).

[2] "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.,* 229 N.C. 518, 520, 50 S.E. 2d 295, 297 (1948). When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning. *Briggs v. Mills, Inc.,* 251 N.C. 642, 111 S.E. 2d 841 (1960); *Howland v. Stitzer,* 240 N.C. 689, 84 S.E. 2d 167 (1954); *Strigas v. Insurance Co.,* 236 N.C. 734, 73 S.E. 2d 788 (1953); *Atkinson v. Atkinson,* 225 N.C. 120, 33 S.E. 2d 666 (1945); 4 Williston, *Contracts* § 616 (3d ed. 1961); Calamari & Perillo *Contracts* § 49 (1970).

[3] A contract, however, encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion. 4 Williston, *Contracts* § 601B (3d ed. 1961). "The court will be prepared to imply a term if there arises from the language of the contract itself, and the circumstances under which it is entered into, an inference that the parties must have intended the stipulation in question." 1 Chitty, *Contracts* § 693 (23d ed. A. G. Guest 1968). The doctrine of implication of unexpressed terms has been succinctly stated as follows:

"Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which

as honest, fair, and just men they ought to have made." 17 Am. Jur. 2d *Contracts* § 255 at 649 (1964). However, "[n]o meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions." 17 Am. Jur. 2d *Contracts, supra* at 652.

We come now to apply the foregoing principles to the construction of the separation agreement which Colee and Lynn executed in June 1970. In express terms they declared that they could no longer live together without endangering their health and well-being. They agreed that henceforth they would live wholly separate and apart from each other as though they had never been married and that neither would molest the other or interfere in his affairs. She agreed to make no demands upon him for support and to impose no obligation or responsibility upon him. Each agreed that the other would thereafter hold, acquire, and dispose of "all classes and kinds of property, both real and personal *as though free and unmarried,* without the consent or joinder of the other party" and each released *"the right to administer upon the estate of the other."* (Emphasis added.) Further, they agreed to divide their household furnishings between them. (Apparently, they owned no real estate jointly.)

[4]   In our view, the specific terms of the contract are totally inconsistent with an intention that the parties would each retain the right to share in the estate of the other under G.S. 29-13 and G.S. 29-14, if he or she were to become the surviving spouse. The provisions that each would thereafter acquire, hold, and dispose of property as though unmarried and that each renounced the right to administer upon the estate of the other refute the contention that Lynn intended to retain any rights in her husband's estate.

"Agreements must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, gathered from the language employed by them. . . ." *Stanley v. Cox* 253 N.C. 620, 635, 117 S.E. 2d 826, 836 (1960). We also point out that the "term 'separation and property settlement agreement' in the absence of clear language or impelling implications connotes not only complete and permanent cessation of marital relations, but a full and final settlement of all property rights of every kind and character." *Bost v. Bost,* 234 N.C. 554, 557, 67 S.E. 2d 745, 747 (1951).

. In this case the intention of each party to release his or her share in the estate of the other is implicit in the express provisions of their separation agreement, their situation and purpose at the time the instrument was executed. The law will, therefore, imply the release and specifically enforce it. We hold that Lynn Wood Colee, the surviving spouse of Tommy Curtis Colee, deceased, released her right to share in his estate by the execution of the separation agreement of 19 June 1970.

The decision of the Court of Appeals is

Reversed.