LADANE WILLIAMSON, PLAINTIFF/APPELLEE v. LAURA M. BULLINGTON, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF WILLIAM T. BULLINGTON, JR., DECEASED, DEFENDANT/APPELLANT

No. COA99-703

(Filed 15 August 2000)

### 1. Divorce— property settlement agreement—estate—remedy

The trial court's grant of summary judgment in favor of plaintiff ex-wife, based on a property settlement agreement imposing upon decedent husband the duty to make a will to bequeath the pertinent lease interests to plaintiff during decedent's lifetime and his failure to do so, is vacated and plaintiff is allowed the opportunity to amend her pleadings to assert the appropriate remedy if she so chooses, because: (1) the agreement does not

guarantee that plaintiff would inevitably receive the property without having to purchase it; and (2) the requirement that decedent prepare a will bequeathing the property to plaintiff was open-ended, meaning plaintiff's rights accrued only upon decedent's death.

**2. Parties— interest in outcome of litigation—not necessary party**

The trial court properly held that plaintiff's brother and father were not necessary parties to this action seeking to enforce a property settlement agreement between plaintiff ex-wife and decedent husband, because while plaintiff's brother and father have interests in the outcome of the litigation, their interests are not of such a nature as to render it impossible for the court to finally adjudicate the question presented.

**3. Civil Procedure— summary judgment—affidavits**

The trial court properly struck plaintiff's affidavits supporting her motion for summary judgment in an action seeking to enforce a property settlement agreement between plaintiff ex-wife and decedent husband, because: (1) portions of each of plaintiff's affidavits were properly stricken as inadmissible hearsay, irrelevant, or violative of the parol evidence rule; and (2) the portions that would remain provide no support to plaintiff's motion for summary judgment.

Judge GREENE dissenting.

Appeal by defendant from judgment entered 4 March 1999 by Judge William C. Gore, Jr., in Brunswick County Superior Court. Heard in the Court of Appeals 28 March 2000.

*King, Walker, Lambe & Crabtree, P.L.L.C., by William O. King, and Powell & Payne, by William A. Powell, for plaintiff-appellee.*

*Rountree & Seagle, L.L.P., by George Rountree, III and Charles S. Baldwin, IV, and Frink, Foy & Yount, P.A., by Henry G. Foy, for defendant-appellant.*

EDMUNDS, Judge.

Defendant Laura M. Bullington appeals the trial court's grant of summary judgment in favor of plaintiff LaDane Williamson. We vacate entry of judgment and remand this case with instructions.

Plaintiff is the former wife of William T. Bullington, Jr. (decedent). She and decedent separated after being married for approximately fifteen years. Following their separation, on 31 August 1990, plaintiff and decedent entered into a Property Settlement Agreement (the Agreement). Pursuant to the Agreement, decedent was to keep, among other things, a one-half interest in the parties' 50% interest in two golf course leases. However, with regard to this property, which is the subject matter of this action, the Agreement provided as follows:

> Husband agrees that he will promptly take any and all reasonable and necessary steps to prepare a Last Will and Testament to cause his estate upon his death to distribute all of his interest in and to the Ocean Isle Beach Golf Lease . . . and the Pearl Golf Course Lease . . . to Wife and, if Wife shall predecease Husband, to the parties' children in equal shares.

> With respect to said Ocean Isle Beach Golf Lease and Pearl Golf Course Lease, Husband shall not at any time during his lifetime dispose of all or any part of his interest in said leases without Wife's written consent. The term "dispose of" as used in this paragraph shall include a sale, assignment, transfer, conveyance, gift, encumbrance, pledge, hypothecation, or other disposition of his interest in said lease (voluntary, involuntary, or otherwise), including committing a levy or attachment of said leases. In the absence of such written consent, the following provisions shall govern:

> . . . .

> (5) If Husband violates the preceding provisions concerning these lease interest restrictions, Wife or Wife's father or brother shall have an option to purchase all of Husband's lease interest at fair market value as that term is defined hereinafter.

> (6) If Husband violates the aforesaid provision concerning his obligation to cause his estate to bequeath the lease interest to Wife or alternatively, to the parties' children upon his death, then Wife or Wife's father or brother shall have the option to purchase Husband's interest in the leases in question at fair market value as that term is defined hereinafter.

Thereafter, plaintiff and decedent divorced, and decedent married defendant Laura M. Bullington. Decedent died testate on 1 December

1997, leaving his entire estate, including the lease interests on the golf courses, to defendant.

Plaintiff filed suit against defendant and decedent's estate seeking the following specific performance: "That Defendant(s) be ordered to immediately transfer to Plaintiff all of the previously-existing rights of William T. Bullington, Jr. in the two (2) golf courses identified herein . . . ." Defendant Bullington timely answered and made a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1999). The parties filed cross-motions for summary judgment. At the hearing on the motions, the trial court struck affidavits that plaintiff had attached to her motion, then granted summary judgment in favor of plaintiff. Defendant appeals.

I.

Property settlements such as the one at issue here are "as binding and enforceable as other contracts," *Riley v. Riley*, 86 N.C. App. 636, 638, 359 S.E.2d 252, 253 (1987) (citations omitted), and should be " 'determined by the same rules which govern the interpretation of contracts,' " *Small v. Small*, 93 N.C. App. 614, 620, 379 S.E.2d 273, 277 (1989) (quoting *Lane v. Scarborough*, 284 N.C. 407, 409, 200 S.E.2d 622, 624 (1973)). Therefore, when determining the meaning and effect of the instant property settlement agreement, the trial court should look to the "language of the agreement as it reflects the intentions of the parties" and be guided by the " 'presum[ption] the parties intended what the language used clearly expresses, and . . . mean[s] what on its face it purports to mean.' " *Hagler v. Hagler*, 319 N.C. 287, 291, 294, 354 S.E.2d 228, 232, 234 (1987) (citations omitted). If "the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court." *Id.* at 294, 354 S.E.2d at 234. Additionally, "a contract must be construed as a whole, considering each clause and word with reference to all other provisions and giving effect to each whenever possible." *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 504, 320 S.E.2d 892, 897 (1984) (citations omitted).

The Agreement at bar specifically provides for the scenario that has unfolded, where decedent, having agreed to bequeath the lease interests to plaintiff, failed to keep that agreement. Paragraph 3(a)(6) states: "If Husband violates the aforesaid provision *concerning his obligation to cause his estate to bequeath the lease interest to Wife* . . . , then Wife or Wife's father or brother shall have the option to purchase Husband's interest . . . ." (Emphasis added.) Additionally, Paragraph 10 states:

**WILLIAMSON v. BULLINGTON**

[139 N.C. App. 571 (2000)]

> [T]his Agreement is the only contract existing between the parties. The covenants, stipulations, premises, agreements, assignments, conveyances and provisions in this instrument are inclusive, and they fully and completely determine all issues, controversies and claims between Wife and Husband so that . . . neither can have or will have any past, present or future claims against the other for any reason, other than the breach of any provision of this Agreement.

[1] Notwithstanding Paragraph 3(a)(6), plaintiff contends that requiring defendant to transfer the lease interests was the correct remedy because the Agreement imposed upon decedent the duty to make a will bequeathing the property to plaintiff during decedent's lifetime; had decedent done so, at his death, plaintiff would have received the property free of charge. This argument fails for two reasons. First, the Agreement does not guarantee that plaintiff would inevitably receive the property without having to purchase it. Pursuant to Paragraph 3(a)(5) of the Agreement, an attempt by decedent to transfer the property during his lifetime would provide plaintiff with the sole option of purchasing the lease interests at fair market value. Second, the requirement that decedent prepare a will bequeathing the property to plaintiff was open-ended; decedent was not required to prepare the will by any particular time. Therefore, plaintiff's rights set out in Paragraph 3(a)(6) accrued only upon decedent's death. Those rights control the outcome of this appeal. By granting the remedy sought in plaintiff's motion for summary judgment, a remedy different from that provided in the Agreement, the trial court failed to enforce the Agreement originally reached between the parties. This failure was prejudicial error. Accordingly, we vacate the trial court's grant of summary judgment in favor of plaintiff.

We must now determine the proper remedy. We have found no North Carolina case in which a plaintiff sought, and the trial court granted, specific performance of a wrong remedy under the terms of the controlling agreement. However, it appears that plaintiff still has a claim under the terms of the Agreement and that she should not be precluded from asserting it. *See, e.g., Felix v. Workmen's Compensation Appeals Board,* 116 Cal. Rptr. 345 (Cal. Ct. App. 1974) ("Where a plaintiff inadvertently or mistakenly chooses a remedy which proves to be the wrong remedy, or at least an unfruitful one, he may thereafter seek an alternative remedy and is not estopped under the doctrine of election of remedies."); *Geist v. Lehmann,* 312 N.E.2d

42 (Ill. App. Ct. 1974) (reversing trial court's dismissal of plaintiff's amended complaints in contract action where contract specified remedy for breach, stating "if a party has but one remedy, a mistaken resort to an unavailable inconsistent remedy will not bar him from later choosing his correct remedy unless the other party has relied on the election of the first remedy"); *Beyer v. Easterling*, 738 So. 2d 221 (Miss. 1999) (reversing summary judgment against plaintiff, who had filed and won a previous suit, on grounds that "[c]onsiderations of fairness and equity do not support the dismissal of a possibly meritorious lawsuit based on an earlier lawsuit which may have been filed based on a misunderstanding of the applicable facts"); *Paul's Rod & Bearing, Ltd. v. Kelly*, 847 S.W.2d 68 (Mo. Ct. App. 1991) ("Paul's has a right growing out of the transaction, but has chosen the wrong remedy against the Kellys, and in such an instance, this court has the discretion to 'remand the cause to permit the petition to be amended, and a retrial of the cause.' "); *Lancaster v. Smithco, Inc.*, 128 S.E.2d 915 (S.C. 1962) (establishing the rule "that the mistaken choice of a fancied remedy on a certain state of facts is not such an election as will bar subsequent pursuit of another remedy which is appropriate to the same state of facts"). Accordingly, we remand this case with instructions that leave should be granted for plaintiff to amend the complaint to assert the appropriate remedy should she so choose. *See* N.C. Gen. Stat. § 1A-1, Rule 15(a) (1999); *Ingle v. Allen*, 53 N.C. App. 627, 629, 281 S.E.2d 406, 408 (1981) (reversing dismissal for lack of subject matter jurisdiction and remanding with instructions to allow reformation of pleadings).

In light of our decision to vacate summary judgment in favor of plaintiff and to allow plaintiff the opportunity to amend her pleadings, determining the propriety of defendant's motion for summary judgment would be inappropriate at this time. *See Madry v. Madry*, 106 N.C. App. 34, 38-39, 415 S.E.2d 74, 77 (1992) ("In light of our decision to allow defendant the opportunity to amend her pleadings, summary judgment in favor of either party would be inappropriate at this time."). Because we decline to address this assignment of error, defendant should not be prejudiced by the former filing and denial of her summary judgment motion and may refile should plaintiff elect to amend her complaint.

II.

[2] Next, defendant contends that the trial court erred by granting summary judgment because plaintiff's father and brother are not parties to the action. *See* N.C. Gen. Stat. § 1A-1, Rule 19 (1999).

Paragraph 3(a)(6) of the Agreement states that plaintiff, her father, or her brother shall have the option to purchase decedent's interest. We address this issue because it may arise again. Plaintiff's father and brother are not necessary parties to this action. "A necessary party is one who is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence." *Carding Developments v. Gunter & Cooke*, 12 N.C. App. 448, 451-52, 183 S.E.2d 834, 837 (1971).

In *Carding Developments*, a case concerning breach of contract, three parties entered into a contract: the plaintiff, the defendant, and a Canadian corporation. The plaintiff filed suit against the defendant, and the defendant moved to dismiss on grounds that the plaintiff was not the real party in interest and that a necessary party, i.e., the Canadian corporation that was a party to the contract, had not been joined. The trial court denied the motion but ordered joinder of the Canadian corporation. This Court found no prejudicial error, holding:

> We do not view Carding Canada as a necessary party. Plaintiff, although a formal party to the agreement, is in effect a third party beneficiary. A party to a contract is ordinarily not a necessary party in a suit brought against the other contracting party by a beneficiary who claims the contract has been breached. It does not follow, however, that the court committed reversible error in ordering the joinder of Carding Canada as a party, for if it is a proper party, plaintiff may not complain of its joinder.

> . . . While this is a matter primarily between Carding Canada and plaintiff, it nevertheless represents an interest which Carding Canada has in this litigation. . . . Therefore, Carding Canada most assuredly has interests in this controversy, although its interests are not of such a nature as to render it impossible for the court to finally adjudicate the question of defendant's liability to plaintiff without Carding Canada's presence.

*Id.* at 452-53, 183 S.E.2d. at 837-38 (internal citations omitted). Accordingly, the Court held that the Canadian corporation was a *proper party* to the suit, thus permitting the trial court to require joinder, but was not a *necessary party* to the suit. *See id.* at 453, 183 S.E.2d at 838.

Similarly, in the case at bar, while plaintiff's father and brother certainly have interests in the outcome of the litigation, "[their] interests are not of such a nature as to render it impossible for the court to finally adjudicate the question [presented]." *Id.* at 453, 183 S.E.2d at 837-38. The trial court correctly found that plaintiff's brother and father were not necessary parties.

### III.

**[3]** Lastly, plaintiff cross-assigns error to the trial court's striking of affidavits submitted with plaintiff's motion for summary judgment. *See* N.C. R. App. P. 10(d). Again, we address this issue because it may arise again.

Rule 56(e) of the North Carolina Rules of Civil Procedure governs the form of affidavits and provides in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (1999). If an affidavit contains hearsay matters or statements not based on an affiant's personal knowledge, the court should not consider those portions of the affidavit. *See Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 499 S.E.2d 772 (1998). Similarly, if an affidavit sets forth facts that would be inadmissible in evidence because of the parole evidence rule, such portions should be struck by the trial court. *See Borden, Inc. v. Brower*, 284 N.C. 54, 199 S.E.2d 414 (1973).

Portions of each of plaintiff's affidavits were properly stricken as inadmissible hearsay, irrelevant, or violative of the parole evidence rule. The portions that would remain after striking the improper statements provide no support to plaintiff's motion for summary judgment. Accordingly, the trial court correctly struck plaintiff's affidavits supporting her motion for summary judgment. This assignment of error is overruled.

Vacated and remanded with instructions.

Judge McGEE concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority that the trial court granted plaintiff a remedy not provided for in the Agreement. I, therefore, respectfully dissent.

A provision in a contract is ambiguous when the "language of [the] contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993).

In this case, the Agreement requires decedent "to prepare a Last Will and Testament to cause his estate upon his death to distribute all of his interest in and to the Ocean Isle Beach Golf Lease . . . and the Pearl Golf Course Lease . . . to [plaintiff]." Paragraph 3(a)(6) of the Agreement further provides decedent:

> shall not at any time *during his lifetime* dispose of all or any part of his interest in said leases without [plaintiff's] written consent. . . . In the absence of such written consent, the following provisions shall govern:
>
> (6) If [decedent] violates the aforesaid provision concerning his obligation to cause his estate to bequeath the lease interest to [plaintiff] . . . then [plaintiff] or [plaintiff's] father or brother shall have the option to purchase [decedent's] interest in the leases in question at fair market value as that term is defined hereinafter.
>
> (7) The fair market value of the lease interest in question will be reached by mutual agreement of the parties . . . .

(Emphasis added.)

Plaintiff argues the remedy provided for in paragraph 3(a)(6) of the Agreement applies only to actions taken by decedent in breach of the Agreement during decedent's lifetime. In contrast, defendant argues paragraph 3(a)(6) applies only to decedent's obligation to bequeath the lease agreement to plaintiff and is not limited to actions taken by decedent during his lifetime. Because the remedy provided for in the contract is fairly and reasonably susceptible to either of these constructions, the remedy is ambiguous.

When a provision in a contract is ambiguous, the trial court must construe the contract "in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." *Johnston County v. R. N. Rouse & Co.*, 331 N.C. 88, 94, 414 S.E.2d 30, 34 (1992).

In this case, the Agreement provides the parties with a remedy in addition to the ambiguous remedy provided for in paragraph 3(a)(6). In the paragraph of the Agreement entitled "PERFORMANCE: BREACH: ENFORCEMENT: REMEDIES," the Agreement provides "[b]oth [decedent] and [plaintiff] mutually agree that either party hereto shall have the right to compel the performance of this Agreement or to sue for the breach thereof." Pursuant to this provision, plaintiff brought suit against defendant for specific performance of the Agreement and the trial court properly granted plaintiff the relief sought. I, therefore, would affirm the trial court's order granting summary judgment in favor of plaintiff.